UNITED STATES v. NORTHERN PAC. RY. CO.

(Circuit Court of Appeals, Ninth Circuit. August 3, 1914.)

No. 2381.

MASTER AND SERVANT (§ 13*)—HOURS OF SERVICE LAW—VIOLATION—"UNAVOIDABLE ACCIDENT"—"CASUALTY."

Defendant operated a single track railroad between two stations, over which the trains of three railroad companies were operated, aggregating 28 passenger trains daily and a large number of freight trains. According to schedule, the crew of train 303, west bound, left T. at 1:40 p. m. daily, arriving at P. at 6:45 p. m., and, returning, left P. at 7:25 the next morning, arriving at T. at 12:35 p. m. The crew left on time May 12, 1913, but were detained by a serious wreck of another train until 6 p. m., when the crew and the passengers of train 303 were transferred around the wreck to train 314, which had come up from P., when they proceeded to P., reaching there at 12:30 a. m. May 13th. The crew, after being off duty about 6½ hours, returned to T. on their regular run, and in doing so was on duty about 17 hours without having had 8 continuous hours off duty. *Held*, that the failure of the train dispatchers to appreciate the fact that the transfer of the crew would prevent their return to T. on their regular train without keeping them on duty more than 16 hours without 8 consecutive hours rest was a casualty or unavoidable accident, within the exception of the Hours of Service Law (Act March 4, 1907, c. 2939, 34 Stat. 1416 [U. S. Comp. St. Supp. 1911, p.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

1322]) § 3, and that the railroad company was therefore not subject to a penalty.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 14; Dec. Dig. § 13.*

For other definitions, see Words and Phrases, vol. 8, pp. 7149–7151, 7822, 7823; vol. 1, pp. 1003, 1004; vol. 8, p. 7597.

Hours of service of employés, see note to United States v. Houston Belt & Terminal Ry. Co., 125 C. C. A. 485.]

In Error to the District Court of the United States for the Southern Division of the Western District of Washington; Edward E. Cushman, Judge.

Action by the United States of America against the Northern Pacific Railway Company. Judgment for defendant, and plaintiff brings error. Affirmed.

Clay Allen, U. S. Atty., of Seattle, Wash., and Monroe C. List, Sp. Asst. to U. S. Atty., of Washington, D. C.

Geo. T. Reid, J. W. Quick, and L. B. Da Ponte, all of Tacoma, Wash., for defendant in error.

Before GILBERT and ROSS, Circuit Judges, and WOLVERTON, District Judge.

ROSS, Circuit Judge. This action was brought by the government to recover from the defendant railway company the prescribed penalties for three alleged violations of the act of Congress entitled "An act to promote the safety of employés and travelers upon railroads by limiting the hours of service of employés thereon," approved March 4, 1907 (34 St. Lg. p. 1415); the complaint containing three counts, the first of which relates to the employment by the company of one of its conductors for certain specified periods of time without allowing him to have "at least eight consecutive hours off duty," as required by section 2 of the act mentioned, and the second and third counts relating, respectively, to the two brakemen employed by the company under like conditions as the conductor.

That portion of section 2 of the act of March 4, 1907, applicable to the case, is as follows:

"That it shall be unlawful for any common carrier, its officers or agents, subject to this act to require or permit any employé subject to this act to be or remain on duty for a longer period than sixteen consecutive hours, and whenever any such employé of such common carrier shall have been continuously on duty for sixteen hours he shall be relieved and not required or permitted again to go on duty until he has had at least ten consecutive hours off duty; and no such employé who has been on duty sixteen hours in the aggregate in any twenty-four hour period shall be required or permitted to continue or again go on duty without having had at least eight consecutive hours off duty."

Section 3 of the act, which provides for prosecutions of its violations and prescribes the penalties therefor, contains two provisos, the first of which is in these words:

"Provided, that the provisions of this act shall not apply in any case of casualty or unavoidable accident or the act of God; nor where the delay

was the result of a cause not known to the carrier or its officer or agent in charge of such employé at the time said employé left a terminal, and which could not have been foreseen."

The defense interposed to the action by the railway company, which was sustained by the action of the court below in directing the jury to return a verdict for the defendant and in denying a like motion on the part of the government for a directed verdict in its favor, was that the undisputed facts of the case brought it within the proviso of the act of Congress above quoted.

The conductor and brakemen in question constituted a crew whose run had been long established between the city of Tacoma, in the state of Washington, and the city of Portland, in the state of Oregon; the regular and usual run being to leave Tacoma on train No. 303 at 1:40 p. m. daily, arriving, if on schedule time, at Portland at 6:45 p. m., making the time of the crew on duty 5 hours and 35 minutes, including the 30 minutes they were required to report before starting. Their regular run required them to leave Portland for the return trip at 7:25 the next morning, arriving in Tacoma, if on schedule time, at 12:35 p. m. of the same day, making the time of the crew on duty on the return trip, including the preparatory time, 5 hours and 40 minutes, so that this regular crew was off duty at Portland 12 hours and at Tacoma 24 hours and 35 minutes, when the trains made their schedule time.

The record shows without dispute that, between the stations of South Tacoma and Lake View on this line, there is a single track over which the trains of three railroad companies were operated, namely, the Northern Pacific, Great Northern, and Oregon-Washington Railroad & Navigation Company, aggregating 28 passenger trains daily, besides a large number of freight trains. The evidence showed without conflict that, on the occasion in question, the crew in question left Tacoma on train 303 at 1:40 p. m. of May 12, 1913, and was due to meet passenger train No. 362 of the Oregon-Washington Railroad & Navigation Company at the station of South Tacoma at 1:56 p. m. of the same day, but that train 362 was derailed between Lake View and South Tacoma at about 1:50 p. m., about six minutes before the regular time of the meeting of the two trains. That derailment tore up the track, overturned the engine and coaches of train 362, resulting in the death and injury of a number of passengers, and prevented train 303, on which was the crew here in question, from proceeding on to Portland until about 6 p. m. of the same day, when that crew, with the passengers of train 303, were transferred to passenger train 314, which had come up from Portland. Train 314, with the crew and passengers of train 303, was then backed to a place near Centralia, where it was turned around and then proceeded to Portland, reaching there at 12:30 a. m. of May 13th. The crew in question, after being off duty about 6 hours and a half at Portland, returned to Tacoma on its regular run on train 308, and in doing so was on duty about 17 hours without having had 8 hours off duty.

The demoralization of the traffic over the road at the time in question, growing out of the derailment, is clearly shown by the uncontra-

dicted testimony in the case; indeed, it is expressly conceded by counsel for the government that the delay of the crew in question on its regular run from Tacoma to Portland was due to the "unavoidable accident at South Tacoma." It is equally plain from the undisputed evidence that the accident was the sole cause why the crew in question was engaged on its run for more than 16 hours without a rest of 8 consecutive hours, so that the question is whether the circumstances of the case bring it within the first proviso to section 3 of the act of Congress, upon which the action is based.

Undoubtedly the train dispatcher both at Tacoma and at Portland would, under ordinary conditions, be held to have known that the delay of train 303 at South Tacoma, and the transfer of its crew and passengers to train 314, could not have enabled them to reach Portland in time for the same crew to return to Tacoma on its regular train 308 without being kept on duty for more than 16 hours without a consecutive rest of 8 hours; but the evidence is uncontradicted to the effect (indeed, it could hardly have been otherwise) that both dispatchers were deeply engrossed in arranging and caring for the movement of the large number of trains, including the necessary wrecking outfits, together with the numerous incidentals, necessarily growing out of such a disaster. Under such circumstances, it would not, we think, be reasonable to hold the company liable for their failure to check up the time of service of the various crews of the very numerous trains passing over this particular piece of road at that particular time. And such we think was the view of Congress in providing, as it did, that the act of May 4, 1907, should "not apply in any case of casualty or unavoidable accident."

We are of opinion that the court below was right in holding that the circumstances of the present case brought it within that proviso.

The judgment is affirmed.